V I R G I N I A:

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF VIRGINIA
Lynchburg Division

| | |
|---|---|
| HARRISON KING, | : |
|     Plaintiff, | : |
|     v. | :   Case No. |
| S & S FOODS, LLC<br>    Shyam Bhardwaj<br>    501 S Main<br>    Pierce, ID 83546 | : |
| and | : |
| BOY SCOUTS OF AMERICA<br>    John J. Beardsworth, Jr.<br>    Hunton & Williams<br>    951 E. Byrd Street<br>    Riverfront Plaza East Tower<br>    Richmond, VA 23219 | : |
| and | : |
| NATIONAL CAPITAL AREA COUNCIL<br>BOY SCOUTS OF AMERICA, COUNCIL #82<br>    CT Corporation System<br>    4701 Cox Road, Suite 285<br>    Glen Allen, VA 23060 | : |
|     Defendants. | : |

## **COMPLAINT**

COMES NOW the Plaintiff, Harrison King, by counsel, and moves this Court for Judgment against the Defendants, S & S Foods, LLC, Boy Scouts of America, and National Capital Area Council Boy Scouts of America, for the reasons and in the amounts stated herein, and in support thereof states as follows:

# PARTIES

1. The Plaintiff, Harrison King, born on April 27th, 1994, is and was at all relevant times herein a resident of Fauquier County, Virginia.

2. The Defendant, S & S Foods, LLC (hereinafter "S & S"), is an Idaho limited liability company, and its corporate headquarters are located in Azusa, California. S & S is a manufacturer and distributor of food products, including the ground beef that caused Harrison King's E. Coli 0157:H7 infection and resulting injuries. By the nature of its business, and for all times relevant to this action, S & S owed a duty to comply with all applicable federal and state statutes, laws, regulations, and safety codes, including the requirements of the Federal Meat Inspection Act (FMIA) 21 U.S.C. § 601, and all the rules, regulations, and policies promulgated pursuant to it, which include but are not limited to the Hazard Analysis and Critical Control Points preventative approach to food safety (HACCP), and 9 C.F.R. 416 – 417.

3. The Defendant, Boy Scouts of America (hereinafter "Boy Scouts"), is a Texas corporation, and its corporate headquarters are located in Irving, Texas. Therefore, this Defendant is a foreign corporation and not a resident of the Commonwealth of Virginia, but is authorized to do, and does, business in the Commonwealth of Virginia. The Boy Scouts sponsored, organized, and operated Camp Goshen, the camp where the ground beef that caused Harrison King's E. Coli 0157:H7 infection and resulting injuries was served.

4. The Defendant, National Capital Area Council, Boy Scouts of America Council #82, (hereinafter "NCAC"), is a DC corporation, and its corporate headquarters are located in Bethesda, MD. Therefore, this Defendant is a foreign corporation and not a resident of the Commonwealth of Virginia, but is authorized to do, and does, business in the Commonwealth of Virginia. The NCAC sponsors, organizes, and operates Boy

Scout programs in ten counties of Northern Virginia, including Fauquier County, home of Harrison King's Troop 175. NCAC sponsors Camp Goshen, the camp where the ground beef that caused Harrison King's E. Coli 0157:H7 infection and resulting injuries was served.

## JURISDICTION AND VENUE

5. This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000.00, exclusive of costs, and is a conflict between parties of different states.

6. S & S is in the business of manufacturing and selling meat products, including those products at issue in this case, for distribution to Virginia for use and consumption by residents of Virginia.

7. Boy Scouts and NCAC are in the business of operating Camp Goshen, in Goshen, Virginia.

8. Venue in this jurisdiction is proper given that the facts which give rise to this claim occurred in Virginia and Plaintiff resides in Virginia, although, ultimately, another federal court in Virginia may be a more appropriate and convenient jurisdiction given Harrison's residence and ongoing course of treatment and damages.

## FACTS

### The E. Coli S & S Outbreak and Recall

9. In July of 2008, approximately 84 campers at the Goshen Boy Scout Summer Camp Facility in Rockbridge County, Virginia were infected with E. Coli 0157:H7. At least 30 of those persons were laboratory confirmed to have E. Coli 0157:H7.

10. The Virginia Department of Health investigated the outbreak and determined that the ground beef served at Goshen Boy Scout Camp tested positive for E. Coli 0157:H7.

11. The ground beef was manufactured, distributed and sold by S & S. Upon receiving information in regards to the investigation and outbreak, S & S recalled 153,630 pounds of ground beef.

### Harrison King's E. Coli 0157:H7

12. On or about July 22, 2008, Harrison King was a camper at Goshen Boy Scout Camp, as a member of Troop 175. The Troop was spending a week at Goshen, an overnight and full service program facility. All basic living needs were provided, including all food and food related services.

13. The food service provided at Goshen included dinner meals, with the food provided in bulk fashion as necessary.

14. On or about July 22, 2008, Harrison King and Troop 175 were provided the ingredients needed for dinner, which included hamburger meat. The Goshen staff, under the direction and supervision of Boy Scouts and NCAC employees and agents, distributed to Troop 175 a large brick of ground beef to be included in the meal. The block of ground beef was covered in aluminum foil to cook over a fire for dinner.

15. Harrison King, as well as many others, consumed the ground beef manufactured, distributed, and sold by S & S, and ultimately provided by Boy Scouts and NCAC directly to Troop 175 scouts and leaders.

16. By July 24, 2008, Harrison's physical appearance and condition had deteriorated. He spent the entire night and following day in the medic building.

17. By July 27, 2008, Harrison was suffering from uncontrollable diarrhea, fatigue, and nausea. On July 28, 2008, Harrison was admitted to the hospital for

dizziness, weakness, fever, abdominal pain, and bloody diarrhea. That same date, Harrison's stool tested positive for E. Coli 0157:H7, and he was transferred to a different hospital that was equipped to accommodate his unique medical needs.

18. Harrison King's condition continued to worsen during his stay at INOVA Fairfax Hospital. On August 3, 2008, he was diagnosed with hemolytic uremic syndrome (hereinafter "HUS"), a fatal complication of the E. Coli 0157:H7 infection. He was subsequently transferred to a medical level intensive care unit. Harrison sustained severe complications during the procedure to implant a port for HUS diagnostic purposes and nearly bled out during the procedure.

19. During Harrison's stay in intensive care, he underwent numerous dialysis treatments and suffered from pancreatitis as a result of the HUS illness. He continued to be bedridden, only able to get out of bed for physical therapy for fifteen minutes at a time. By August 10, 2008, Harrison had not had a bowel movement in 12 days.

20. After discharge at INOVA Fairfax Hospital on August 12, 2008, Harrison began having headache episodes lasting approximately 20 to 30 minutes during which he experienced chest pain and change in skin color. He continued to suffer from lethargy and depression. Additionally, he had bouts of mental fog, memory loss, confusion, vision trouble, and general weakness. For 11 months following his discharge, Harrison received treatment to rehabilitate his mobility at a physical therapy center.

21. Since 2008, Harrison physically struggled through school and everyday life as a young teenager. Arthritis from the E. Coli 0157:H7 infection and HUS complicated Harrison's condition making it difficult for him to perform physical activity.

22. Harrison was treated at Children's National Hospital; doctors found damage to Harrison's brain from the sepsis. Harrison was later treated at Kluge

Children's Rehabilitation Center at the University of Virginia Children's Hospital, where doctors followed up on Harrison's Acquired Brain Injury (ABI). Doctors noted further complications, which left him with a worsened cognitive baseline and variety of neurological complications due to the E. Coli 0157:H7 infection and HUS.

23. Harrison continues to suffer emotional and physical injuries, disabilities, and damages, and will continue to do so in the future.

Negligence – Count I
S & S Foods, LLC

24. The Plaintiff repeats and re-alleges each of the allegations set forth in the preceding paragraphs above, and are hereby incorporated by reference.

25. S & S, in their manufacturing, distributing, and selling operations, had a duty to plaintiff to use reasonable care in the manufacturing, distribution, and sale of its meat products, the observance of this duty would have prevented or eliminated the risk that the Defendant's food product would become contaminated with E. Coli 0157:H7. S & S breached this duty.

26. S & S owed Plaintiff a duty to use reasonable care in the selection and monitoring of its suppliers. Specifically, S & S owed Plaintiff a duty to use ingredients, supplies, and other materials that were reasonably safe, wholesome, free of defects, and that were otherwise clean, free from adulteration, and safe for human consumption. S & S breached this duty.

27. S & S owed Plaintiff a duty to properly train, supervise, and monitor their respective employees, and to ensure their compliance with all applicable statutes, laws, regulations, or safety codes pertaining to manufacturing, distribution, storage, and sale of similar food products. S & S breached this duty.

28. S & S owed Plaintiff a duty to comply with all applicable statutes, laws, regulations, and safety codes in the manufacturing, distribution and sale of its meat. S & S breached this duty and ultimately caused the Plaintiff's illness.

29. As a direct and proximate result of S & S's acts of negligence, Plaintiff suffered injuries and damages. Plaintiff's battle with E. Coli 0157:H7 illness, HUS development, injuries and damages associated with the illness occurred as a direct and proximate result of Defendant's breach of duties above.

### Negligence Per Se – Count II
### S & S Foods, LLC

30. The Plaintiff repeats and re-alleges each of the allegations set forth in the preceding paragraphs above and are hereby incorporated by reference.

31. S & S owed Plaintiff a duty to comply with all applicable statutes, laws, regulations, and safety codes, including the requirements of the Federal Meat Inspection Act (21 U.S.C. § 601, *et seq.*).

32. S & S failed to comply with such provisions of law identified in the preceding paragraph and was, as a result, negligent *per se* with regard to the manufacturing, distribution and sale of its meat.

33. Plaintiff is among the class of persons designed to be protected by the applicable statutes, laws, regulations, and safety codes mentioned above that pertain to the manufacture, distribution, handling, and sale of meat products by S & S.

34. Plaintiff's E. Coli 0157:H7 illness, HUS development and associated injuries occurred as a direct and proximate result of conduct by S & S that constituted negligence *per se.*

### Breach of Warranty – Count III
### S & S Foods, LLC

35. The Plaintiff repeats and re-alleges each of the allegations set forth in the preceding paragraphs above and are hereby incorporated by reference.

36. S & S is a manufacturer, seller and distributor of ground beef products. S & S, through its manufacture, sale and distribution of ground beef products, is liable to Plaintiff for breaching express and implied warranties that it made regarding the adulterated product that Plaintiff consumed. These express and implied warranties included the implied warranties of merchantability and fitness for a particular use and foreseeable purpose, i.e. consumption.

37. S & S is the manufacturer and seller of the ground beef consumed by Plaintiff, which caused Plaintiff's E. Coli 0157:H7 infection and HUS development.

38. The ground beef manufactured and sold by S & S was contaminated with E. Coli 0157:H7, a potentially fatal pathogen, when it left the possession and control of S & S, and therefore was unreasonably dangerous for its ordinary and foreseeable purpose.

39. S & S breached the warranty of the safety of its goods for their expected and foreseeable purpose. The breach of warranty was the direct and proximate cause of Plaintiff's injuries, and therefore, S & S is liable to Plaintiff for the injuries sustained.

### Strict Liability – Count IV
### S & S Foods, LLC

40. The Plaintiff repeats and re-alleges each of the allegations set forth in the preceding paragraphs above, and are hereby incorporated by reference.

41. S & S was at all times the relevant manufacturer, distributor, and/or seller of the adulterated food product that is the subject of this action.

42. The adulterated meat that S & S manufactured, distributed, and/or sold was, at the time it left Defendant's control, defective and unreasonable dangerous for its ordinary and expected use because it contained *E. Coli* 0157:H7.

43. The adulterated meat that defendant manufactured, distributed, and/or sold was delivered to Plaintiff without any change in its defective condition, and was used in the manner expected and intended as it was consumed by Plaintiff.

44. S & S owed Plaintiff a duty of care to design, manufacture, and/or sell food that was not adulterated, that was fit for human consumption, that was reasonably safe, and free of *E. Coli* 0157:H7. S & S breached this duty.

45. S & S owed Plaintiff a duty of care to prepare, serve, and sell food that was fit for human consumption, to the extent contemplated by a reasonable consumer. S & S breached this duty.

46. As a direct and proximate cause of the defective and unreasonably dangerous condition of the adulterated meat that S & S manufactured, distributed, and/or sold, Plaintiff sustained injuries and damages from the *E. Coli* 0157:H7.

<u>Negligence – Count V</u>
<u>Boy Scouts of America and National Capital Area Council</u>

47. The Plaintiff repeats and re-alleges each of the allegations set forth in the preceding paragraphs above and are hereby incorporated by reference.

48. It was the duty of the Boy Scouts and NCAC to use reasonable care in developing a food acquisition, storage and distribution program, to assure the campers were not provided adulterated and spoiled food.

49. After proper transportation and preparation methods, it was the duty of the Boy Scouts and NCAC to use reasonable care in providing food to campers in a safe

fashion, to prevent the serving of dangerous and life threatening food, as observed here.

50. It was the duty of the Boy Scouts and NCAC to use reasonable care in preparing the camp sight and bonfire used for the campers to make dinner, so that campers, including Plaintiff, might be able to cook their meat with reasonable safety.

51. It was the duty of the Boy Scouts and NCAC to use reasonable care to provide specific instructions and supervision to the campers, while cooking their meals. Specifically, the Boy Scouts and NCAC should have provided campers with instructions on the proper form and temperature to cook their meat, so that the campers, including Plaintiff, might be able to cook their meat to a reasonably proper temperature.

52. It was the duty of the Boy Scouts and NCAC to use reasonable care in supervising the campers before they ate their meat to insure that the meat was thoroughly cooked, so that campers, including Plaintiff, would be reasonably safe eating the meat.

53. After Plaintiff consumed that meat, he acquired an E.Coli 0157:H7 infection and subsequently HUS, as the meat was adulterated and not cooked to a proper temperature to kill any diseases.

54. The Boy Scouts and NCAC knew, or should have known, that the subsequent poisoning and illnesses could have been avoided with proper supervision or care and was foreseeable due to the precautions and procedures normally used to cook meat safely.

55. The Boy Scouts and NCAC knew, or in the exercise of reasonable care should have known, Plaintiff's meat was not cooked properly before he consumed it for dinner.

56. The Boy Scouts and NCAC should have inspected the meat before it was consumed by any of the campers, including Plaintiff.

57. Plaintiff acquired an E.Coli 0157:H7 infection, as well as HUS, as a direct and proximate result of the negligence, carelessness and recklessness of the Boy Scouts and NCAC, in the preparation, instruction and supervision of the campers cooking brick blocks of meat over a campfire at Camp Goshen.

58. As a result the illnesses, Plaintiff suffers from serious and permanent injuries, has suffered, and in the future will suffer, great pain of body and mind, has incurred, and in the future will incur hospital, physician and related bills in an effort to be cured of said injuries and has been deprived of earnings and earning capacity.

## **DAMAGES**

59. As a direct and proximate result of Defendants' negligence and breach of aforementioned duties, Plaintiff has sustained serious and permanent injuries, has suffered and will continue to suffer great pain of body and mind, including extreme anxiety, distress, and loss of enjoyment of life, and have incurred, and will continue to incur in the future, hospital, physician and related bills in an effort to be cured of said injuries. Additionally Plaintiff sustained a loss of education as well as a loss of future earning capacity.

WHEREFORE, the Plaintiff, Harrison King, by counsel, does hereby move this Court for entry of Judgment against the Defendant S & S Foods, LLC, the Boy Scouts, and National Capital Area Council, in the amount of $15,000,000.00 (fifteen million dollars) and for his costs, attorney's fees to the extent provided by law, and such other and further relief as the Court deems appropriate.

## **JURY TRIAL**

The Plaintiff, by counsel, hereby demands a trial by jury of this matter.

HARRISON KING
By Counsel

GREENSPUN, SHAPIRO P.C.


BY: _____/s/_____
Peter D. Greenspun
State Bar I.D. No. 18052
Anastasia T. Kranias
State Bar I.D. No. 81238
Counsel for Plaintiff
Greenspun, Shapiro P.C.
3955 Chain Bridge Road
Second Floor
Fairfax, Virginia  22030
(703) 352-0100
703) 591-7268 – Facsimile
pdg@greenspunlaw.com
atk@greenspunlaw.com