# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
## LYNCHBURG DIVISION

| | |
|---|---|
| HARRISON KING, <br><br> *Plaintiff,* <br><br> v. <br><br> S & S FOODS, LLC, <br> BOY SCOUTS OF AMERICA, <br> NATIONAL CAPITAL AREA COUNCIL BOY SCOUTS OF AMERICA, COUNCIL #82, <br><br> *Defendants.* | CASE NO. 6:14-cv-00014 <br><br><br> **MEMORANDUM OPINION** <br><br><br><br> JUDGE NORMAN K. MOON |

## I. INTRODUCTION

Plaintiff Harrison King ("Plaintiff") filed this action on April 24, 2014, alleging a number of tort violations against S&S Foods, LLC ("S&S Foods"). Plaintiff also asserts a single claim of negligence against Defendants Boy Scouts of America ("BSA") and National Capital Area Council, Boy Scouts of America, Local Council # 82 ("NCAC"). Plaintiff's claims arise from a Boy Scout camping trip in which he ate tainted meat produced and distributed by S&S Foods and prepared under the direction of BSA and NCAC. This matter is now before me on a motion for summary judgment filed by BSA and NCAC (collectively, "Defendants").

## II. BACKGROUND

Harrison King is a member of Troop 175, a Boy Scout troop sponsored by Defendants. In late July of 2008, King's troop attended the Goshen Boy Scout Summer Camp Facility (the "Goshen Facility") in Rockbridge County, Virginia. The troop arrived at the Goshen Facility in late July and attended the camp for approximately one week. During their trip, King and his troop engaged in a number of activities designed to teach "life skills."

1

During one such activity, King and his troop prepared a meal consisting of ground beef. King, along with the other members Troop 175, cooked the beef over an open fire under the supervision of Defendants' employees. Shortly after consuming the beef, King began experiencing uncontrollable diarrhea, fatigue, and nausea. On July 28, 2008, King went to the hospital to identify the source of his ailments. The hospital performed a test on King's stool, which tested positive for E. Coli 0157:H7 ("E. Coli"). After King's condition worsened, he returned to INOVA Fairfax Hospital ("INOVA") for more testing. On August 3, 2008, doctors at INOVA diagnosed King with hemolytic uremic syndrome, a potentially fatal complication of E. Coli. As a result of his infection, King continues to suffer from: (1) painful headaches; (2) physical fatigue; (3) brain damage; and (4) neurological complications.

### III. LEGAL STANDARD

The court should grant summary judgment if the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986) (citations omitted). "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248.

In considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). If the nonmoving party bears the burden of proof, "the burden on the moving party may be

2

discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. If the moving party shows such an absence of evidence, the burden shifts to the nonmoving party to set forth specific facts illustrating genuine issues for trial. *See* Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324. The trial court has an "affirmative obligation" to "prevent 'factually unsupported claims [or] defenses' from proceeding to trial." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting *Celotex*, 477 U.S. at 323–24)).

## IV. DISCUSSION

Defendants claim they are immune from liability with respect to Plaintiff's claim of negligence and are therefore entitled to summary judgment. Defendants' assertion derives from Virginia's charitable immunity doctrine, which provides that "charitable institutions are immune from liability based upon claims of negligence asserted by those who accept their charitable benefits." *Thrasher v. Winand*, 389 S.E.2d 699, 701 (Va. 1990) (citing *Weston's Adm'x v. St. Vincent, etc.*, 107 S.E. 785, 790 (1921)). Plaintiff makes two arguments in response. First, Plaintiff argues Defendants are not entitled to immunity because they are not "charitable institutions." Second, even if Defendants are charitable institutions, Plaintiff argues Defendants engaged in gross negligence when they allowed King to cook ground meat without proper supervision. Plaintiff therefore argues Defendants are not protected by the charitable immunity doctrine, as "the shield of charitable immunity does not extend to liability for acts of gross negligence . . . ." *Cowan v. Hospice Support Care, Inc.*, 603 S.E.2d 916, 919 (Va. 2004).

### A. *Charitable Institution Status*

In order to determine whether an organization is a "charitable institution," the Virginia Supreme Court directs lower courts to consider whether "the entity . . . is organized with a

3

recognized charitable purpose and that it operates in fact in accord with that purpose." *Ola v. YMCA of South Hampton Roads, Inc.*, 621 S.E.2d 70, 72 (Va. 2005). Where an entity has a charter that sets out a charitable purpose, there is a rebuttable presumption it operates in accord with its purpose and therefore qualifies as a charitable institution. *Id.* at 73. Where no charter is produced, "[t]he character of the organization may [also] be ascertained . . . from the manner in which it is conducted." *Bailey v. Lancaster Ruritan Recreation Ctr.*, 504 S.E.2d 621, 623 (Va. 1988) (citing *Danville Community Hosp. v. Thompson*, 43 S.E.2d 882, 884 (1947)).

i. *BSA's Status as a Charitable Institution*

Under this rubric, BSA is entitled to a rebuttable presumption that it operates in accord with its charitable purpose. BSA submitted into evidence The Charter and Bylaws of the Boy Scouts of America, which states its purpose is "to promote . . . the ability of boys to do things for themselves and others, to train them in Scoutcraft, and to teach them patriotism, courage, self-reliance, and kindred virtues . . . ." Such a mission has been deemed "charitable" by other courts in the United States Court of Appeals for the Fourth Circuit, *see Terry v. Boy Scouts of America, Inc.*, 471 F. Supp. 28, 31 (D.S.C. 1978) (applying an analogous charitable immunity doctrine in finding the Boy Scouts are a "charitable organization"), and I see no reason why my conclusion should differ here. As BSA's charter clearly indicates a charitable purpose, there is a rebuttable presumption that it operates in accord with that purpose. As Plaintiff has produced no evidence to rebut this presumption, I find BSA qualifies as a charitable institution.

ii. *NCAC's Status as a Charitable Institution*

The analysis differs slightly with respect to NCAC. NCAC failed to provide its charter, and therefore it is not entitled to a presumption regarding the character of its organization. NCAC's failure to do so, however, does not defeat its claim to immunity. As the Supreme Court

4

of Virginia has explained, "[t]he character of [an] organization may be ascertained not only from such powers and purposes [as described in its charter,] but also from the manner in which it is conducted." *Bailey*, 504 S.E.2d at 623 (citation omitted); *see also Conway v. Mount Lebanon Missionary Baptist Church*, No. CL08-1241, 80 Va. Cir. 148, at *4 (Va. Cir. Feb. 5, 2010) (analyzing charitable immunity status without reference to the entity's charter).

The ultimate question here is whether NCAC "is organized with a recognized charitable purpose and that it operates in fact in accord with that purpose." *Ola*, 621 S.E.2d at 72. Thus, NCAC must first produce evidence demonstrating it was organized with a charitable purpose. *Conway*, 80 Va. Cir. at *4. Second, NCAC must show it continues to operate within the scope of its mission. *Id.* The purpose of such an inquiry is to determine whether the organization is truly charitable as opposed to being "maintained for gain, profit, or advantage." *See Davidson v. Colonial Williamsburg Foundation*, 817 F.Supp. 611, 613 (E.D. Va. 1993).

With respect to the first requirement, it is clear NCAC was formed with a charitable purpose. In an affidavit attached to its motion for summary judgment, NCAC's Chief Operating Officer states the NCAC "shares the same mission and purpose as the Boy Scouts of America;" namely, to teach valuable life skills to young men through Scoutcraft. Such a purpose is clearly charitable, as my analysis in the preceding discussion indicates.

Turning to the second requirement, the following factors are instructive in determining whether an entity continues to operate in accord with its purpose: (1) the organization's tax exempt status; (2) the organization's reliance on donations; (3) whether the entity has stockholders or others with equity in the company; (4) the frequency with which the entity earns a profit, and if it does, whether the profit is used for charitable purposes; and (5) whether the entity takes into consideration a person's ability to pay for the organization's services. *See Ola*,

5

Case 6:14-cv-00014-NKM-RSB   Document 31   Filed 11/20/14   Page 5 of 10   Pageid#: 236

621 S.E.2d at 73 n.1 (citations omitted). An examination of NCAC's 2013 Annual Report indicates it is tax exempt, depends heavily on donations, and has no stockholders. Further, in the event that NCAC realizes a surplus in its revenue, that surplus is reinvested in scouting programs. Finally, NCAC regularly provides financial assistance to those who are unable to pay membership fees, and no child is turned away due to his inability to pay such fees. Under such facts, there is little doubt NCAC operates within the scope of its charitable mission. *See, e.g., Memorial Hospital, Inc. v. Oakes*, 108 S.E.2d 388, 392 (Va. 1959) (finding a hospital operated consistently with its charitable purpose where it served its clients without regard to their ability to pay, had no stockholders, and conducted its affairs as a non-profit institution). Accordingly, I also find that NCAC is entitled to "charitable institution" status.

A. *Exceptions to the Charitable Immunity Doctrine*

The Supreme Court of Virginia has held that "the shield of charitable immunity does not extend to acts of gross negligence or willful and wanton negligence." *Ola*, 621 S.E.2d at 72 (citing *Cowan v. Hospice Support Care, Inc.*, 603 S.E.2d 916, 919 (Va. 2004)). Plaintiff argues Defendants' conduct falls within the "gross negligence" exception because its agents allowed Troop 175 to cook ground meat without proper supervision. Defendants counter with two separate arguments. First, Defendants argue that Plaintiff failed to plead gross negligence in his complaint and therefore cannot proceed on a gross negligence theory of liability. Second, Defendants argue Plaintiff has produced no evidence of gross negligence and therefore there is no "genuine dispute" of material fact sufficient to preclude summary judgment.

i. *Plaintiff's Claim of Gross Negligence*

At the outset, it should be noted that "[p]leadings must be construed so as to do justice," Fed. R. Civ. P. 8(e), and "[a]n overly restrictive reading of a complaint is inconsistent with th[is]

6

mandate." *Starks v. Perloff Bros., Inc.*, 760 F.2d 52, 55 (3d Cir. 1985). Although Plaintiff asserts only a single count of negligence against Defendants, the facts forming the basis of Plaintiff's claim also support a gross negligence theory of liability. *See* Pl.'s Compl. ¶¶ 51-52, 57 (alleging Defendants allowed King to cook his own meal without proper supervision and that "as a direct . . . result of the . . . recklessness of the [Defendants]," Plaintiff acquired E. Coli). Accordingly, because Defendants have received notice of the substance of Plaintiff's claim, I will construe Plaintiff's complaint to allege gross negligence.[1] *See Parker v. Allentown, Inc.*, 891 F. Supp. 2d 773, 779 (D. Md. 2012); *see also McClure v. City of Hurricane*, No. 3:10-0701, 2011 WL 1485599, at *5 n.5 (S.D. W. Va. Apr. 19, 2011).

   *ii. Insufficient Evidence and the Propriety of Summary Judgment*

Even assuming Plaintiff's complaint can be construed to allege gross negligence, Defendants argue they are nonetheless entitled to summary judgment because Plaintiff has produced no evidence to support such a claim. Plaintiff counters that he has not had a sufficient opportunity to engage in discovery and therefore Defendants' motion is premature. Plaintiff requests additional time to engage in discovery so that he may adequately support his claim.

As has been stated, summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Generally speaking, however, "summary judgment is appropriate

---

[1] In his memorandum in opposition to summary judgment, Plaintiff also attempts to argue that it has asserted a claim of "negligent retention or negligent hiring." Plaintiff does so in an attempt to bring Defendants' conduct within another exception to the charitable immunity doctrine, as Defendants are liable for the negligence of their employees "if the organization fails to exercise ordinary care in the selection and retention of those employees." *Infant C. v. Boy Scouts of America*, 391 S.E.2d 322, 325 (Va. 1990). A fair reading of Plaintiff's complaint, however, precludes such a construction. In his complaint, Plaintiff makes no mention of "negligent hiring" or "negligent retention," nor does he mention any facts that might support such a claim. Accordingly, I will not construe Plaintiff's complaint to allege negligent hiring or negligent retention. *Parker*, 891 F. Supp. 2d at 779.

only after adequate time for discovery." *Greater Baltimore Center for Pregnancy Concerns, Inc. v. Mayor and City Council of Baltimore*, 721 F.3d 264, 280 (4th Cir. 2013) (citing *Evans v. Techs Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)) (internal quotation marks and citations omitted). Thus, where the nonmoving party believes more time is necessary to properly oppose a motion for summary judgment, it must so advise the court by filing an affidavit or declaration pursuant to Federal Rule 56(d).[2] *See Evans*, 80 F.3d at 961.

Though Plaintiff has failed to provide such an affidavit or declaration, I am mindful of the fact that such a filing is not an absolute requirement. *See Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002). In fact, the Fourth Circuit permits a discovery request to be made in a motion or legal memorandum "[w]hen the nonmoving party, through no fault of its own, has had little or no opportunity to conduct discovery," "when fact-intensive issues . . . are involved," and when "the nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.' " *Id.* at 244-45 (quoting *First Chicago Int'l v. United Exchange Co.*, 836 F.2d 1375, 1380 (D.C. Cir. 1988)).

Throughout his memorandum in opposition to summary judgment, Plaintiff repeatedly states he has had insufficient time to engage in discovery and therefore cannot properly oppose Defendants' motion. Such objections put this Court and Defendant on notice regarding Plaintiff's concerns and are sufficient to serve as "the functional equivalent of an affidavit." *See Sutton v. Roth*, *LLC*, 361 F. App'x 543, 549 (4th Cir. 2010) (finding a plaintiff's memorandum in opposition to summary judgment "effectively served as a [Rule 56(d)] affidavit"); *see also Flattery v. Southwest Virginia Fertility Center, LLC*, No. 7:08-cv-00256, 2009 WL 49995, at *2

---

[2] Federal Rule 56(d) provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may . . . allow time to obtain affidavits or declarations or to take discovery."

8

(W.D. Va. Jan. 7, 2009) ("[T]he court notes that the plaintiff's memorandum in opposition to [Defendant's] motion adequately fulfills the purpose of [Rule 56(d)] by putting the court on notice of the reasons why [Defendant's] motion for summary judgment is premature.").

Moreover, a brief examination of the record demonstrates that Plaintiff has been unable to obtain discovery through no fault of his own. On September 8, 2014, Defendants filed their answer to Plaintiff's complaint. Thereafter, on September 24, 2014, this Court entered a Pretrial Order directing the parties to "confer and develop a discovery plan . . . within 14 days of this Order." Rather than conferring and developing such a plan, Defendants filed their summary judgment motion, only eight days after the entry of this Court's pretrial order. Under such circumstances, "it cannot be said that Plaintiff has been dilatory in taking discovery." *Anderson v. Town of South Boston*, No. 4:10-cv-004, 2010 WL 2836125, at *2 (W.D. Va. July 15, 2010); *see also Whalen v. Rutherford*, No. 3:12-cv-00032, 2012 WL 6473151, at *8 (W.D. Va. Dec. 13, 2012) (finding that a plaintiff had insufficient time to conduct discovery where the defendant moved for summary judgment "only four weeks after the court entered the [discovery] scheduling order, and over five months before discovery was scheduled to end").

Finally, whether Defendants engaged in gross negligence is a highly fact-intensive inquiry. *See Bond v. Joyner*, 136 S.E.2d 903, 906 (Va. 1964) (noting "[w]hether gross negligence has been proved depends upon the facts and circumstances of each case"). Accordingly, because Plaintiff has asserted a fact-intensive claim, was not lax in pursuing discovery, and submitted his request for additional discovery in his opposition motion, I find Plaintiff's request for additional time to engage in discovery should be granted. *See Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 245 (4th Cir. 2002).

9

## V. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment (docket no. 23) is DENIED without prejudice. I also direct the parties to comply with this Court's pretrial order (docket no. 22) regarding the development of a discovery plan.

It is so ORDERED.

Entered this __20th__ day of November 2014.

                                                                                  _____
                                                                                  NORMAN K. MOON
                                                                                  UNITED STATES DISTRICT JUDGE